**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **KEITH ARNOT, MICHAEL BRINDAMOUR,** on behalf of his minor child E.B., **ERCOLE BUZZANGA,** and **NEIL E. GILLIS,** individually and on behalf of all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>**NORTH ATLANTIC STATES CARPENTERS BENEFIT FUND** d/b/a **NASCBF**,<br><br>       Defendant. | Case No.: 1:26-cv-10137-IT |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................1-2

II.   SUMMARY OF PLAINTIFF'S ALLEGATIONS ...................................2-3

III.  STANDARD OF REVIEW ......................................................................3-4

IV.   ARGUMENT ...........................................................................................4-20

      A.  Plaintiffs Lack Article III Standing to Pursue Their Claims .............4-8

      B.  The Complaint's State Law Claims are Preempted by ERISA ...........8-13

          i.    Plaintiffs' State Law Claims Are Expressly Preempted Because They
                Allege Impropriety in Central Matters of Plan Administration…….....8-13

          ii.   Plaintiffs' State Law Claims Are Completely Preempted ……………….13

      C.  Plaintiffs Fail to State a Cause of Action as to Each of the Four Counts
          Asserted……………………………………………………………………13-20

          i.    Plaintiffs' Negligence Claim Should be Dismissed for Failure to Allege an
                Actual Loss …………………………………………………………..13-15

          ii.   Plaintiff's Negligence Per Se Claim is Inherently Flawed ……………...15

          iii.  Plaintiffs' Unjust Enrichment Claim Should Be Dismissed …………15-17

          iv.   Plaintiffs' Breach of Implied Contract Claim Should Be Dismissed...17-19

          v.    Plaintiffs' Claim for Declaratory Judgment Should be Dismissed ....19-20

V.    CONCLUSION .......................................................................................20

CERTIFICATE OF SERVICE ....................................................................22

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Aetna Health Inc. v. Davila*
        542 U.S. 200 (2004) .................................................................................13

*Alfred Dunhill Ltd. v. Interstate Cigar Co*
        499 F.2d 232 (2d Cir. 1974) ......................................................................15

*Alleruzzo v. SuperValu, Inc.*
        870 F.3d 763 n.6 (8th Cir. 2017) ............................................................17-18

*Ashcroft v. Iqbal*
        556 U.S. 662 S. Ct. 1937 (2009) ................................................................3

*Bell Atl. Corp. v. Twombly*
        550 U.S. 544 S. Ct. 1955 (2007) ................................................................3

*Boston's Children First v. Boston Sch. Comm.*
        183 F. Supp. 2d 382 (D. Mass 2002) ...........................................................20

*Clapper v. Amnesty Int'l USA*
        568 U.S. 398 S. Ct. 1138 (2013) ................................................................6

*Cmty Bank of Trenton v. Schnuck Markets, Inc.*
        15-cv-01125 2017 U.S. Dist. LEXIS 66014 (S.D. Ill. May 1, 2017) 887 F.3d 803 (7th Cir.
        2018) ...........................................................................................19

*Cmty Builders, Inc. v. Indian Motocycle Associates, Inc.*
        44 Mass. App. Ct. 537 N.E.2d 964 (1998) ......................................................16

*Conservation L. Found., Inc. v. Acad. Express, LLC*
        129 F.4th 78 (1st Cir. 2025) ......................................................................6

*Danca v. Private Health Care Systems, Inc.*
        185 F.3d 1 (1st Cir., 1999) .....................................................................9-10

*Delaney v. Reynolds*
        63 Mass. App. Ct. 239 N.E. 2d 554 (2005) ....................................................14

*Donovan v. Philip Morris USA, Inc.*
        455 Mass. 215 N.E.2d 891 (2009) ..............................................................14

*El Dia, Inc. v. Hernandez Colon*
    963 F.2d 488 n. 12 (1st Cir. 1992) .................................................................20

*Ernst & Young v. Depositors Econ. Prot. Corp.*
    45 F.3d 530 (1st Cir. 1995) ..........................................................................19

*Ferreira v. Sterling Jewelers, Inc.*
    130 F.Supp.3d 471 (D. Mass. 2015) ...............................................................15

*Gobeille v. Liberty Mut. Ins. Co.*
    577 U.S. 312 (2016) ........................................................................8-9, 11-12

*Gordo-Gonzalez v. United States*
    873 F.3d 32 (1st Cir. 2017) .............................................................................3

*Hartigan v. Macy's, Inc.*
    501 F. Supp. 3d 1 (D. Mass. 2020) ...................................................................4

*Harvey v. Nat'l Amusements, Inc.*
    24-10027-GAO, 2025 U.S. Dist. LEXIS 57256 (D. Mass. Mar. 27, 2025) ............17

*Ingersoll-Rand Co. v. McClendon*
    498 U.S. 133 (1990) .......................................................................................10

*Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*
    29 Mass. App. Ct. 215 N.E. 2d 122 (1990) .......................................................14

*Katz v. Pershing*
    672 F.3d 64 (1st Cir. 2012) ...........................................................................4, 7

*Kenn v. Eascare, LLC*
    483 F.Supp.3d 26 (D. Mass. 2020) ....................................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*
    572 U.S. 118 n.6, 134 S. Ct. 1377 L. Ed. 2d 392 (2014) .....................................6

*Longenecker-Wells v. Benecard Servs.*
    658 F. 659 (3d Cir. 2016) ...............................................................................18

*Lopez v. Garriga*
    917 F.2d 63, 67 (1st Cir. 1990) .......................................................................20

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 S. Ct. 2130 (1992) ....................................................................4-5

iii.

*N.Y. State Conf. of Blue Cross Blue Shield Plans v. Travelers Ins. Co.*
    514 U.S. 645 (1995) ................................................................... 8

*Portier v. NEO Tech. Sols.*
    3:17-cv-30111 2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019) ............... 19, 25

*Price Chopper, Inc. v. Consol. Bevs., LLC*
    09-10617-FDS, 2011 U.S. Dist. LEXIS 26135 (D. Mass. Mar. 10, 2011) ............... 23

*Pullen v. Boston Elevated Ry*
    208 Mass. 356, N.E. 469 (1911) ................................................... 4, 20

*Reidy v. UMass Mem. Med. Ctr.*
    2085-cv-01101, 2021 WL 6777622 (Mass. Super. June 17, 2021) ..................... 14

*Remijas v. Neiman Marcus Grp., LLC*
    794 F.3d 688 (7th Cir. 2015) ..................................................... 17

Santagate v. Tower
    64 Mass. App. Ct. 324 N.E.2d 171 (2005) ......................................... 15

*Santos v. U.S. Bank Nat'l Ass'n,*
    89 Mass. App. Ct. 687 N.E.3d 548 (2016) ......................................... 14

*Spokeo, Inc. v. Robins*
    578 U.S. 330 S. Ct. 1540 (2016) ................................................. 5-6

*Taylor v. UKG, Inc.*
    22-cv-11168, -30096, -40082, 2023 WL 8291834, F. Supp. 3d (D. Mass, Sept. 15,
    2023) ........................................................................... 3

*Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*
    534 F. Supp. 340 (D. Mass. 1982) ................................................. 15

*T.F. v. B.L.*
    442 Mass. 522 N.E.2d 1244 (2004) ............................................... 17-18

*TransUnion LLC v. Ramirez*
    597 U.S. 413 S. Ct. 2190 (2021) ................................................. 4

*Toretto v. Donnelley Fin. Sols, Inc.*
    1:20-CV- 2667, 2022 WL 348412 (S.D.N.Y. Feb. 4, 2022) ........................... 15

iv.

*Tyler v. Michaels Stores, Inc.*
    840 F. Supp. 2d 438 (D. Mass. 2012) ........................................................ 16

*Walsh v. Alight Sols. LLC*
    44 F.4th 716 (7th Cir. 2022) ................................................................. 10

*Webb v. Injured Workers Pharmacy, LLC*
    72 F.4th 365 (1st Cir. 2023) ................................................................. 5-7

*Whitmore v. Arkansas*
    495 U.S. 149 S. Ct. 1717 (1990) ............................................................ 10

*Woodward v. Emulex Corp.*
    854 F. Supp. 2d 149 (D. Mass. 2012), 714 F.3d 632 (1st Cir. 2013) .............. 4

*Zipperer v. Raytheon Co.*
    493 F.3d 50, 54 (1st Cir. 2007) ............................................................. 9-10

**Statues**

U.S. Const. Art. III ............................................................................. 2-6

29 U.S.C. ........................................................................................ 8, 11-13, 17

28 U.S.C. ........................................................................................ 19

C.F.R. § 164.520 ............................................................................... 13

**Rules**

Fed. R. Civ. Pro. 12(b)(1) .................................................................. 1-3

Fed. R. Civ. Pro. 12(b)(6) .................................................................. 1-4, 17

v.

Defendant NORTH ATLANTIC STATES CARPENTERS BENEFIT FUND ("NASCBF" or "Defendant") submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (hereinafter, the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I.     INTRODUCTION

Plaintiffs Keith Arnot, Michael Brindamour, on behalf of his minor child E.B., Ercole Buzzanga, and Neil E. Gillis ("Plaintiffs") bring this Complaint against Defendant on behalf of themselves and on behalf of a putative class of current or former employees, customers, participants, and/or beneficiaries of Defendant who allegedly had personal information accessed by a criminal third party in a breach of Defendant's computer network on or around August 18, 2025.[1]

Plaintiffs' Complaint sets forth the following common set of allegations: a criminal third-party actor gained unauthorized access to the computer systems of an ERISA benefit fund, the fund investigated the nature and scope of the intrusion, the fund provided written notice, and the fund offered credit monitoring to those individuals whose personal information may have been at least temporarily accessible. This lawsuit is part of a common trend where one or several of the individuals who received a notice letter quickly file a class action, alleging that the victimized defendant should have prevented the attack, but then fail to identify any actual economic harm to anyone that has occurred as a result of the so-called Data Breach. The proliferation of these lawsuits has led federal courts around the country to closely scrutinize whether litigants can

---

[1] Plaintiffs refer to this issue as the "Data Breach" in their Complaint. So, for purposes of this motion, the network security incident at issue will be referred to as the "Data Breach" or "alleged Data Breach."

establish Article III standing simply by alleging that their information was involved in a data breach.

While three of the four named Plaintiffs in the present action allege that they received letters notifying them of the Data Breach in February of 2026, not one named Plaintiff alleges that they suffered financial fraud, identity theft, or any other concrete harm in connection with the alleged unauthorized access to their personal information. Accordingly, since Plaintiffs do not allege an actual or imminent injury-in-fact, Plaintiffs cannot establish that they have Article III standing to bring this claim, and this Court lacks subject matter jurisdiction under Fed. R. Civ. Pro. 12(b)(1). Additionally, Plaintiffs' state law claims are preempted by ERISA, and the Complaint entirely fails to state a viable cause of action. Accordingly, all claims must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

## II.    SUMMARY OF PLAINTIFFS' ALLEGATIONS

Defendant is a large multi-employer, ERISA-regulated benefit fund that provides health and retirement benefits to active and retired union members of the United Brotherhood of Carpenters across New England states. (*See* ECF No. 24, ¶ 4). The named Plaintiffs are participants and beneficiaries of the Defendant, and the Complaint does not allege they are current or former employees of Defendant. See *id.*, ¶¶ 26, 77-137.[2]  Plaintiffs allege that on or around August 18, 2025, Defendant discovered that its network had been breached by an unauthorized threat actor and that cybercriminals had gained access to personally identifying information and protected health information (hereinafter, collectively, "Private Information") of Defendant's employees and

---

[2] The Defendants note that paragraph twenty-six should be read in the context of the specific allegations regarding the named Plaintiffs in the subsequent paragraphs, which include no reference to employment. Even read in the light most favorable to Plaintiffs, the statement that Plaintiffs are employees *or* participants/beneficiaries cannot be read as an allegation they *are* employees, because in paragraphs 77-137, the Complaint alleges only that the Plaintiffs *are in fact* participants and beneficiaries.

consumers. (*Id.*, ¶¶ 5-7). In general, Plaintiffs allege that the breach occurred because NASCBF lacked adequate security safeguards and practices to protect their Private Information. (*Id.*, ¶ 8).

Plaintiffs Arnot, Brindamour, Buzzanga, and Gillis all allege that since the Data Breach they have experienced an uptick in unwanted spam calls, phishing calls, text messages, and emails; and they have spent time monitoring their accounts to protect against identity theft. (*Id.*, ¶¶ 85-7, 100-2, 113-16, 131-133). Otherwise, Plaintiffs only allege "damages" that include, or in the future may include: anxiety, diminution in the value of their Private Information, risk of future identity theft or fraud, mitigation expenses associated with responding to the effects of the Data Breach, and the loss of value of privacy and confidentiality of the stolen Private Information. (*Id.*, ¶ 140). Importantly, no named Plaintiff alleges to have already experienced any actual misuse of their Private Information.

Plaintiffs assert claims for negligence and negligence *per se* (Count I), unjust enrichment (Count II), breach of implied contract (Count III), and declaratory judgment (Count IV).

## III.    <u>STANDARD OF REVIEW</u>

When reviewing a Rule 12(b)(1) motion attacking standing under Article III of the U.S. Constitution, courts "must determine whether the facts alleged in the complaint, 'taken at face value,' support subject matter jurisdiction." *Taylor v. UKG, Inc.*, Nos. 22-cv-11168, -30096, -40082, 2023 WL 8291834, at *3, --- F. Supp. 3d --- (D. Mass, Sept. 15, 2023) (citing *Gordo-Gonzalez v. United States*, 873 F.3d 32, 35 (1st Cir. 2017)). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). Accordingly, formulaic recitation of the elements of a particular cause of action will not suffice

and "naked assertions devoid of factual enhancement" fail to meet the Rule 12(b)(6) standard. *Id.* at 662.

Article III of the Constitution limits this Court's jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 597 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021). To establish standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)). The alleged injury cannot be "conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136 (citations and internal quotation marks omitted). Thus, "[a]llegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore v. Arkansas*, 495 U.S. 149, 158, 110 S. Ct. 1717, 1724 (1990). In the context of an alleged data breach, it has long been the rule in the First Circuit that an increased risk of future identity theft alone is insufficient to establish Article III standing. *See Katz v. Pershing*, 672 F.3d 64, 79-80 (1st Cir. 2012) (rejecting standing based solely on risk of future injury and risk mitigation costs); *see also Hartigan v. Macy's, Inc.*, 501 F. Supp. 3d 1, 5 (D. Mass. 2020) (dismissing data breach class action complaint for lack of standing where there were "no allegations of any fraudulent use or even attempted use of the personal information to commit identity theft with respect to any Macy's customer whose credit information was stolen.").

## IV.    ARGUMENT

### A.  Plaintiffs Lack Article III Standing to Pursue Their Claims.

Here, Plaintiffs fail to plead facts sufficient to establish Article III standing. Plaintiffs' generic allegations of time spent mitigating and investigating the incident, diminution of some intrinsic value assigned to their Private Information, and their fear of future harm have been specifically rejected by courts within the First Circuit because such hypothetical and conjectural theories of harm do not satisfy the injury-in-fact requirement.

In *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 373 (1st Cir. 2023), the First Circuit found that the complaint's plausible allegations of actual misuse of plaintiff's personal information was enough to state a concrete injury under Article III, *given* that one of the named plaintiff's information that had been stolen in the breach had been used to file a fraudulent tax return. *Id.* (emphasis added). In effect, with *Webb*, the Court created what is routinely referred to in the data breach context as an "actual misuse standard" for standing. Critically, in finding that all of the named plaintiffs in *Webb* had standing to pursue their claims, the Court emphasized that because "at least some information stolen" in the breach of the defendant's system "ha[d] already been misused… [it] makes it likely that other portions of the stolen data will be similarly misused." *Id.* at 376. (internal citations omitted). Here, the Complaint fails to allege that any of the named Plaintiffs have experienced any such misuse, thus fails to allege an injury-in-fact sufficient for Article III standing.

To have standing to sue, a plaintiff must have suffered an injury-in-fact that is concrete, particularized, and actual or imminent—not merely conjectural or hypothetical. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 1548 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992)) (internation quotation marks omitted). For an injury to be particularized, it "'must affect the plaintiff in a personal and individual way.'" *Kenn v. Eascare, LLC*, 483 F.Supp.3d 26, 32 (D. Mass. 2020) (quoting *Lujan*, 504 U.S. at 560, n.1). As for

injury's concreteness, it "must be de facto; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (internal citations and quotation marks omitted). Put another way, it must be "real, and not abstract." *Id.* (internal citations and quotation marks omitted). Because an injury-in-fact cannot be conjectural or hypothetical, mere "'[a]llegations of possible future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147 (2013) (internal citations omitted).

Furthermore, to establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). The traceability requirement "does not require a tort-like showing of proximate causation." *Conservation L. Found., Inc. v. Acad. Express, LLC*, 129 F.4th 78, 90 (1st Cir. 2025) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014) ("Proximate causation is not a requirement of Article III standing, which requires only that the plaintiff's injury be fairly traceable to the defendant's conduct.")). In *Webb*, the plaintiffs' complaint satisfied the traceability requirement of standing in the data breach context because it included allegations that the breach led to the *actual* misuse of at least one of the named plaintiff's information. *See* 72 F.4th at 377.

Specifically, in *Webb*, the First Circuit noted that "[t]he complaint plausibly alleges an injury in fact as to [Plaintiff] Webb based on the allegations of actual misuse of her PII to file a fraudulent tax return." *Id*. at 369. The Court explained that there must be a "plausible connection" between the data breach and the alleged actual misuse of the data. The Court in *Webb* found a plausible connection based upon the "obvious temporal proximity" between the data breach and the filing of the tax return and the activity – the filing of a fraudulent tax return – is precisely what

6

criminals would do with the stolen information that includes social security numbers. *Id.* at 374. Moreover, in finding that the plaintiff in *Webb* who did not allege any actual or concrete fraudulent misuse still had standing, the First Circuit stressed that, "in light of the plausible allegations of some actual misuse [by plaintiff Webb], the complaint plausibly alleges a concrete injury in fact based on the material risk of future misuse of [the other plaintiff's] PII and a concrete harm caused by exposure to this risk." *Id.*

In *Webb*, the First Circuit also pointed to its holding in *Katz v. Pershing, LLC*, 672 F.3d 64 (1st Cir. 2012), where it concluded:

> …[T]he named plaintiff lacked standing to sue as to her state law consumer protection claims that the defendant had employed inadequate data security practices. We stated that "[c]ritically, the complaint [did] not contain an allegation that [her] nonpublic personal information ha[d] actually been accessed by any unauthorized user" -- let alone subsequently misused -- but rather "rest[ed] entirely on the hypothesis that at some point an unauthorized, as-yet unidentified, third party might access her data and then attempt to purloin her identity." The alleged harm in that case was not "impending" because it was "unanchored to any actual incident of data breach." And the plaintiff could not manufacture standing by incurring mitigation costs in the absence of an impending harm.

*Webb*, 72 F.4th at 373 (quoting *Katz*, 672 F.3d at 69-80) (internal citations omitted).

Here, Plaintiffs alleged harms bear a striking similarity to the plaintiffs' in *Katz*. Neither Plaintiff Arnot, Brindamour, Buzzanga, nor Gillis alleges any kind of actual or attempted misuse of their information. They do not allege that they suffered identity theft, fraud, or other misuse of their information involved in the breach. Instead, Plaintiffs assert the same purely theoretical harms rejected by the Court in *Katz* – namely an alleged increased risk of suffering identity theft in the future, and alleged secondary harms stemming from that risk. Plaintiffs attempt to manufacture standing by alleging they have lost time and will continue to lose time and effort in monitoring their accounts for potential misuse, even though the Complaint fails to establish that there is any real impending harm. Under *Webb*, these alleged "harms" are plainly insufficient to establish

7

standing under Article III. Thus, in light of the First Circuit's refusal to acknowledge a mere risk of harm occurring in the future (absent some real indication indicating misuse is plausible) as a sufficient injury-in-fact to establish standing, Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety for lack of standing.

### B.  The Complaint's State Law Claims are Preempted by ERISA.

    i.    <u>Plaintiffs' State Law Claims Are Expressly Preempted Because They Allege Impropriety in Central Matters of Plan Administration</u>

All state law claims in the Complaint are preempted by ERISA, because they intrude on central matters of plan administration, including recordkeeping and disclosure.  The preemption provisions of ERISA are expansive, demonstrating Congress's intent to give ERISA preemption a "broad scope." *See Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 320 (2016).  Section 514(a) of ERISA states that the law "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a).  This provision has been interpreted to preempt state laws that have "an impermissible connection with ERISA plans", including any state law that "governs…a central matter of plan administration or interferes with nationally uniform plan administration." *Gobeille*, 577 U.S. at 320.  This broad preemption protects ERISA plans, which typically operate across many states, from the administrative and financial burden of complying with a patchwork of state regulations.  *See N.Y. State Conf. of Blue Cross Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).  This doctrine is commonly referred to as "express preemption", "conflict preemption", and "defensive preemption."

State laws that attempt to govern matters of central plan administration such as "reporting, disclosure, and recordkeeping" are preempted by ERISA.  *See Gobeille*, 577 U.S. at 313.  In *Gobeille*, the court held that a Vermont law requiring the reporting of claims information from

ERISA plans was preempted, because it (1) mandated disclosures of information by ERISA plans and (2) thereby indirectly mandated a certain method of recordkeeping. The court noted that recordkeeping and disclosures are "integral aspects of ERISA", which are already overseen by the Department of Labor. *Id.*, at 323. Importantly, the Vermont law was not merely a regulation of costs, like the state tax in *Travelers*. *See* 514 U.S. at 662 (holding state law tax was not preempted). The state law in *Gobeille* mandated particular conduct by ERISA plans with respect to the disclosures of information, and it therefore had an *indirect* and impermissible effect on a plan's recordkeeping. If these mandates were not preempted, ERISA plans operating in Vermont would be subjected to oversight by state authorities regarding whether their recordkeeping and information disclosures were sufficient. This intrusion into central matters of plan administration required preemption to prevent "[d]iffering, or even parallel, regulations from multiple jurisdictions" that could create "wasteful administrative costs and threaten to subject plans to wide-ranging liability." *See Gobeille*, 577 U.S. at 323. This holding shows that ERISA preemption analysis must consider the remedies sought under state law and their impact on plan administration.

It is well established that state law causes of action against ERISA plans are preempted if the claims "create a threat of conflicting and inconsistent state…regulation of the administration of ERISA plans." *See Danca v. Private Health Care Sys.*, 185 F.3d 1, 7 (1st Cir., 1999) (holding that state law negligence claims regarding matters of plan administration were preempted). In *Zipperer v. Raytheon Co.*, the First Circuit held that "even a narrow reading of section 514(a)" compelled the conclusion that a claim for "negligent recordkeeping" was preempted, because the claim could "only be evaluated with respect to Raytheon's recordkeeping responsibilities for the plan." 493 F.3d 50, 54 (1st Cir. 2007). The court reasoned that these responsibilities "were part

and parcel of Raytheon's plan administration", and therefore a state negligence claim regarding such duties created a threat for conflicting state regulation.

The *Zipperer* court found that a claim for negligent recordkeeping threatened both (1) inconsistent state substantive law on the standard of care, as well as (2) duplicative and inconsistent procedures in multiple states. The court reasoned that "allowing a claim to proceed under Massachusetts law would inexorably—and impermissibly—lead to inconsistent state regulations, as state courts 'develop different substantive standards applicable to the same employer conduct, requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction'". *Id.* (citing *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)). And even if different state courts decided to apply the same standard of care, allowing such claims would lead to a separate burden on ERISA plans: complying with "different administrative procedures in different jurisdictions" as plans respond to lawsuits by different plaintiffs, in different states, for the same conduct. *See id.* (citing *Danca*, 185 F.3d at 7).

The state law claims in the Complaint are preempted by ERISA, because they intrude on central matters of plan administration, including recordkeeping. Just as the plaintiff in *Zipperer* alleged they were harmed due to a plan's "negligent recordkeeping", all causes of action in the Complaint "rely on the common claim" that Defendant's electronic recordkeeping was improper. *See* ECF No. 24, ¶10; 493 F.3d at 54.

Cybersecurity is an inherent component of modern-day recordkeeping and thus a central matter of ERISA plan administration. *See generally Walsh v. Alight Sols. LLC*, 44 F.4th 716, 723 (7th Cir. 2022) ("Congress incorporated into ERISA a standard of loyalty and a standard of care. The reasonableness of Alight's cybersecurity services, and the extent of any breaches, is therefore relevant to determining whether ERISA has been violated") (*cleaned up*). Accordingly, the

10

Department of Labor ("DOL") released specific requirements for cybersecurity in 2021, and the DOL's Employee Benefits Security Agency ("EBSA") actively audits plans regarding compliance. *See EBSA Release* 24-1855-NAT ("The [EBSA] believes cybersecurity is a great concern for all employee benefit plans and we continue to investigate potential ERISA violations related to the issue.")  The cybersecurity of ERISA plans is listed as the highest enforcement priority for EBSA in 2026.  *See EBSA Release* 26-31-NAT (Jan 15, 2026).  The regulatory documents containing cybersecurity requirements for ERISA plans are listed in Release 24-1855-NAT ("DOL Cybersecurity Guidance").

The Complaint alleges that the Defendant negligently and otherwise improperly failed to delete electronic participant records.  *See* ECF No. 24, ¶¶ 64(b), 226-227.  But ERISA requires many participant records to be maintained for at least six years and often for the participant's entire lifetime.  *See* 29 U.S.C. § 1027; 29 U.S.C. § 1059(a)(1) (requiring the retention of records sufficient to determine the benefits due to a participant, which for retirement plans with survivor benefits means maintaining such records for the participant's lifetime and beyond).  The Complaint therefore asks this Court to hold that recordkeeping practices required by ERISA are also a violation of state law.

The Complaint also asks this Court to impose a state law standard of care for electronic recordkeeping that is both "differing" and "parallel" to the requirements imposed by ERISA, including the DOL Cybersecurity Guidance.  *See Gobeille*, 577 U.S. at 323.  The Complaint's alleged standard of care would require the Defendant to comply with extensive and specific electronic record security rules for "all business decision-making".  ECF No. 24, ¶63.  The Complaint alleges Defendant had a *state law duty* to comply with guidance from the FTC, the National Institute of Standards and Technology ("NIST") *and* the Center for Internet Security's

("CIS") Critical Security Controls. *See id.*, ¶¶71, 75. These guidelines are each hundreds of pages long and differ materially from the federal DOL "Cybersecurity Program Best Practices." For example, CIS Control 6.3 requires the use of multi-factor authentication for all compatible systems, and the Complaint alleges Defendants were required to implement this measure. *See* ECF No. 4, ¶69. But the DOL's "Cybersecurity Program Best Practices" *explicitly allows* different security measures, authorizing "the use of a similarly effective access control methodology."[3] And nothing would stop another litigant from 'standard-of-care shopping' by alleging that state law requires compliance with some other supposed standards for cybersecurity that are, at a minimum, parallel to the DOL's rules, such as those from the International Organization for Standardization or the Payment Card Industry Security Standards Council.

The Complaint also intrudes on another central matter of plan administration— disclosures—by alleging that state law requires the Defendant to make numerous and onerous disclosures related to cybersecurity. Just as the law in *Gobeille* allegedly required the disclosure of information to the State of Vermont and subjected plans to compliance reviews by the State, the Complaint alleges that the NASCBF was required to disclose specific information about the Data Breach to the Plan's participants, beyond what is statutorily required by ERISA 104(b). *See* 29 U.S.C. § 1024; ECF No. 4, ¶231. The Complaint also alleges that NASCBF must now submit to audits annually for the next 10 years—a procedure significantly more onerous than the state investigations that the *Gobeille* court considered far too burdensome to be imposed on ERISA plans. *See* ECF No. 4, ¶ ¶ 231, 255, Prayer for Relief (g)(xii)); *see* 577 U.S. at 318. This creates the very real prospect that the Defendant will be subject to two parallel cybersecurity audits of the

---

[3] *Available at* https://www.dol.gov/agencies/ebsa/key-topics/retirement-benefits/cybersecurity/best-practices

alleged Data Breach: one by the Department of Labor, under federal law, and one by the Plaintiffs, under state law. The Complaint is seeking to use state law to "bind plan administrators to [a] particular choice" regarding how the Defendant maintains its electronic records, how it conducts day to day benefits administration, and what information it provides to plan participants and beneficiaries. *See Travelers*, 514 U.S. at 659. This is not just cost regulation. This is the impermissible regulation of ERISA plan administration by state law.

ii.    Plaintiffs' State Law Claims Are Completely Preempted

Even if they were not "expressly" preempted by ERISA §514(a), Plaintiff's claims are subject to "complete preemption." State law claims are completely preempted by ERISA's civil enforcement provisions and therefore subject to dismissal where: (1) the plaintiff could have brought the claims under ERISA § 502(a); and (2) there is no other independent legal duty that is implicated by the defendant's actions. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 201 (2004). Put another way, where "interpretation of the terms of [Defendant's] benefit plans" is necessary to evaluate the state law claims, then the claims are completely preempted. *See id.*, at 213. All ERISA plans are required to have a plan document that describes the rights and obligations of the plan and the participants, and all plans providing health benefits must maintain written policies regarding privacy. *See* 29 U.S.C. § 1102; 45 C.F.R. § 164.520. The evaluation of Plaintiffs' state claims (in particular implied contract breach) requires interpretation of Defendant's plan documents and policies. *See, e.g.,* ECF No. 4, ¶75. These claims are therefore preempted.

**C. Plaintiffs Fail to State a Cause of Action as to Each of the Four Counts Asserted.**

i.    Plaintiffs' Negligence Claim Should be Dismissed for Failure to Allege an Actual Loss

In order to state a claim for negligence under Massachusetts law, a plaintiff must allege (1) a legal duty owed by the defendant; (2) breach of that duty; (3) causation; and (4) an actual loss.

*See Santos v. U.S. Bank Nat'l Ass'n*, 89 Mass. App. Ct. 687, 699, 54 N.E.3d 548, 558 (2016) (citing *Delaney v. Reynolds*, 63 Mass. App. Ct. 239, 241, 825 N.E. 2d 554 (2005)). "Negligence in the abstract does not support a cause of action." *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 222, 914 N.E.2d 891, 899 (2009) (quoting *Int'l Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.*, 29 Mass. App. Ct. 215, 217, 560 N.E.2d 122 (1990)). "With respect to future damages, '[a] plaintiff is entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that *possibly* may follow, the injury which he has suffered.'" *Id.* at 223, 899 (quoting *Pullen v. Boston Elevated Ry.*, 208 Mass. 356, 357-358, 94 N.E. 469 (1911)) (emphasis added).

Here, the Complaint does not allege that Plaintiffs have suffered a compensable loss necessary to state a claim for negligence. As with standing, Plaintiffs allege only a future risk of harm, as well as time spent and anxiety incurred related to the future risk from the breach of their information. In *Portier v. NEO Tech. Sols.*, No. 3:17-cv-30111-TSH, 2019 U.S. Dist. LEXIS 227494, at *39 (D. Mass. Dec. 31, 2019), this Court noted that "Massachusetts require[s] a measurable loss as a necessary element of a negligence claim." Measurable loss, such as monetary harm, is necessary to meet the requirement for "actual loss," even when actual misuse is alleged. *See id.* Moreover, unlike the plaintiffs in *Portier*, who assigned a specific monetary value to the time they spent addressing the consequences of the data breach, Plaintiffs here make only general allegations of lost time that do not constitute a cognizable injury able to support a negligence claim. *See id.* at *42. Without the specificity required to make their injuries "measurable," Plaintiffs fail to plead an actual loss sufficient for purposes of a negligence claim. Indeed, Massachusetts courts have rejected negligence claims based only on an increased risk of harm. *See, e.g., Reidy v. UMass Mem. Med. Ctr.*, No. 2085-cv-01101, 2021 WL 6777622, at *2 (Mass. Super. June 17, 2021)

(dismissing data breach class action premised on "speculative and conclusory" allegations, "potential future harm" and receipt of spam calls).

The Complaint's allegations that Plaintiffs' Private Information has diminished in value is also not a cognizable injury, as such allegations are entirely speculative and largely similar to the risk of future harm. Accordingly, Plaintiffs' negligence claim should be dismissed with prejudice.

### ii.    Plaintiff's Negligence *Per Se* Claim is Inherently Flawed

Plaintiffs' failure to allege actual harm or injury is fatal to their claim for negligence *per se*. In addition, the Court should strike Plaintiffs' allegations that Defendant violated its statutory duties under HIPAA and Section 5 of the FTC Act, which they claim constitutes a breach of a duty of care sufficient for a negligence claim. (*See* ECF No. 24, ¶ 241). The FTC Act does not authorize a private cause of action and there is no legislative authority that suggests Congress intended it to protect those affected by data breaches. *See Toretto v. Donnelley Fin. Sols, Inc.*, No. 1:20-CV-2667-GHW, 2022 WL 348412, at *15 (S.D.N.Y. Feb. 4, 2022) (citing *Alfred Dunhill Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)); *Ferreira v. Sterling Jewelers, Inc.*, 130 F.Supp.3d 471, 476 (D. Mass. 2015). Accordingly, Plaintiffs' negligence *per se* claim should be dismissed with prejudice.

### iii.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed

"Unjust enrichment is defined as 'retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Santagate v. Tower*, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005) (quoting *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982)). Recovery on an unjust enrichment claim requires: "'(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the

15

defendant of the benefit under the circumstances would be inequitable without payment for its value.'" *Tyler v. Michaels Stores, Inc.*, 840 F. Supp. 2d 438, 451 (D. Mass. 2012) (internal citation omitted). The requirement that the benefit be "unjust" is "a quality that turns on the reasonable expectations of the parties." *Cmty. Builders v. Indian Motocycle Assocs.*, 44 Mass. App. Ct. 537, 560, 692 N.E.2d 964, 979 (1998).

Here, Plaintiffs cannot plausibly plead the elements of a claim for unjust enrichment. Plaintiffs begin by alleging they conferred a monetary benefit on NASCBF "by providing Defendant with their Private Information." (ECF No. 24, ¶ 259). Plaintiffs next allege that Defendant unjustly obtained this monetary benefit by "saving the costs it reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' Private Information." (*Id.*, ¶ 262). However, no facts support these conclusory allegations. Defendant provided ERISA benefits to Plaintiffs and Class Members, and there is no allegation that Plaintiffs and the Class Members did not receive the benefits for which they provided their information to Defendant.

Plaintiffs' theory seems to be that because Defendant has to collect Private Information in order to provide benefits, the Defendant personally derives a benefit from collecting that information. But this is not the type of "benefit" a claim for unjust enrichment exists to protect. Additionally, the Complaint does not allege how it is unjust for NASCBF to retain money paid for benefits it provided to Plaintiffs. Nor does the Complaint allege that data security measures were ever an agreed-upon part of the provision of benefits, or that such an expectation is reasonable.

Plaintiffs' Complaint is replete with allegations about the supposed value of Private Information on the black market and how much value hypothetical cybercriminals could earn from selling their information. (*See, e.g.*, ECF No. 24 ¶¶ 57–61). However, absent some allegation that Defendant could have, or intended to sell Plaintiffs' information on the black market, Plaintiffs fail

16

to establish that NASCBF obtained a monetary benefit from merely receiving that information. *See Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015) (rejecting the "abstract" theory that an individual's personal information is a commodity of value, "particularly since the complaint does not suggest that the plaintiffs could sell their personal information for value."). In *Harvey v. Nat'l Amusements, Inc.*, No. 24-10027-GAO, 2025 U.S. Dist. LEXIS 57256, at *10 (D. Mass. Mar. 27, 2025), this Court dismissed plaintiffs' unjust enrichment claim in part because defendant gained no "identified benefit by exposing plaintiffs' PII to misuse by an unknown person." Here, NASCBF likewise gained no benefit by suffering a data breach at the hands of a criminal third party.

As the Eighth Circuit explained under a similar set of facts, where parties exchange sensitive information in furtherance of one transaction, they do not contract "for a side order of data security and protection." *See Alleruzzo*, 925 F.3d at 966. Here, Defendant collected Plaintiffs' information simply for the purpose of providing benefits to Plaintiffs—nothing more. Finally, the NASCBF cannot have been unjustly enriched because it is an ERISA trust whose assets are held exclusively for participants and beneficiaries, the fund has no owners or profit motive, and any amounts received became trust assets dedicated by law to benefit purposes rather than private gain. *See* 29 U.S.C. § 1103(c). Accordingly, the claim for unjust enrichment fails and must be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

iv.    <u>Plaintiffs' Breach of Implied Contract Claim Should Be Dismissed</u>

Under Massachusetts law, an implied contract can be inferred from the parties' conduct and their relationship to one another. *See Price Chopper, Inc. v. Consol. Bevs., LLC*, No. 09-10617-FDS, 2011 U.S. Dist. LEXIS 26135, at *13 (D. Mass. Mar. 10, 2011) (citing *T.F. v. B.L.*, 442 Mass. 522, 526-27, 813 N.E.2d 1244 (2004)). "'An implied contract requires proof that there was a

benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit.'" *Id.* (quoting *T.F.*, 442 Mass. at 527). A defendant's failure to object can create an implied contract, but only "if [its] objective actions manifest the existence of an agreement." *Id.* at \*13-15. Still, an implied contract requires the same meeting of the minds that any contract requires. *See Woodward v. Emulex Corp.*, 854 F. Supp. 2d 149, 161 (D. Mass. 2012), aff'd, 714 F.3d 632 (1st Cir. 2013) ("A contract implied in fact comes into being when, notwithstanding the absence of a written or verbal agreement, the conduct or relations of the parties imply the existence of a contract.").

Plaintiffs' Complaint fails to adequately allege an implied contract with Defendant. The Complaint alleges that the named Plaintiffs and Class Members provided their Private Information to Defendant "as part of Defendant's regular business practices and as a condition of receiving employment[,]" and that in return, Defendant impliedly agreed "to ensure that the Private Information of Plaintiffs and Class Members in its possession was secure." (ECF No. 24, ¶¶ 268-9). However, Plaintiffs' conclusory allegations are unsupported by a single statement or any conduct on the part of Defendant. Indeed, there are no allegations of specific facts, instances, or circumstances which tend to show that anyone at NASCBF did or said anything that would give rise to an implied contractual duty to keep Plaintiffs' information secure from unauthorized access by a criminal hacker. Additionally, as courts around the country have held, a defendant's acceptance of personal information alone does not give rise to a contractual obligation. *See Alleruzzo v. SuperValu, Inc. (In re SuperValu, Inc., Customer Data Sec. Breach Litig.)*, 870 F.3d 763, 771 n.6 (8th Cir. 2017) (finding plaintiffs did not become parties to an implied contract to protect PII simply by giving defendant their payment information); *Longenecker-Wells v. Benecard*

18

*Servs.*, 658 F. App'x 659, 662-63 (3d Cir. 2016) (where "[defendant] required Plaintiffs' personal information as a prerequisite to employment[,] [t]his requirement alone did not create a contractual promise to safeguard that information, especially from third party hackers."); *Cmty. Bank of Trenton v. Schnuck Mkts.*, No. 15-cv- 01125-MJR, 2017 U.S. Dist. LEXIS 66014, at *12–13 (S.D. Ill. May 1, 2017) (finding "implicit promise" of data security insufficient to support implied contract claim), aff'd, 887 F.3d 803 (7th Cir. 2018).

Nothing in Massachusetts law supports Plaintiffs' contention that Defendant owed them a contractual duty by simply accepting their Private Information. Therefore, Plaintiffs' claim for breach of an implied contract must be dismissed for failure to state a claim.

v.    Plaintiffs' Claim for Declaratory Judgment Should be Dismissed.

Plaintiffs inappropriately seek a declaration that (a) Defendant owes a legal duty to secure the Plaintiffs' and Class Members' Private Information under the common law and the FTCA; (b) Defendant's existing data monitoring measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect individuals' Private Information; and (c) Defendant continues to breach this legal duty by failing to employ reasonable measures to secure Plaintiffs' and Class Members' Private Information. (*See* ECF No. 24, ¶ 288). Plaintiffs also seek prospective injunctive relief requiring Defendant to "employ adequate security protocols[.]" (*Id.*, ¶ 289).

The Declaratory Judgment Act provides a remedy but not a basis for jurisdiction. *See* 28 U.S.C. §§ 2201-2202. To proceed, there must be an "actual controversy" of sufficient immediacy and reality. *Id.* Even when that standard is met, a court's decision to grant relief is discretionary. *See Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534-35 (1st Cir. 1995). Specifically, a declaratory judgment is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and

19

afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Boston's Children First v. Boston Sch. Comm.*, 183 F. Supp. 2d 382, 396 (D. Mass 2002). *See Portier*, 2019 U.S. Dist. WL 7946103, at \*29 (finding that plaintiffs' request for declaratory relief was duplicative of their negligence claim because it was based on defendant owing them a duty to safeguard their tax information from cyber criminals). Here, the relief sought by Plaintiffs is not declaratory – it is a request for a finding that Defendant had a legal duty and failed to comply with that duty. In other words, Plaintiffs are asking the Court for a declaration that NASCBF is liable for negligence. Thus, the requested declaration serves no useful purpose in clarifying or settling the legal relations at issue and should accordingly be dismissed.

In addition to being duplicative, Plaintiffs have no basis under Massachusetts law for prospective injunctive relief. Plaintiffs can only seek injunctive relief if they can demonstrate the existence of either actual present harm or likely danger of direct injury in the future. *See El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 498 n. 12 (1st Cir. 1992) (citing *Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir. 1990) (an injunction will not issue without a showing of a "likelihood of future unlawful conduct on the defendant's part[.]")). Plaintiffs do not make these allegations, but rather generally claims that absent an injunction, the "risk of another such breach is real, immediate, and substantial." (ECF No. 24, ¶ 290).

## V.    **CONCLUSION**

For each of the reasons stated above, Defendant respectfully requests that the Court dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice.

Respectfully submitted,

The Defendant,

*/s/ James W. Davidson*
One of the Counsels for the Defendant


*/s/ Colby Jackson*
One of the Counsels for the Defendant

James W. Davidson (admitted *pro hac vice*)
**O'HAGAN MEYER LLC**
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
312.422.6100 - T
312.422.6110 – F
jdavidson@ohaganmeyer.com

John E. Young (MA BBO No. 654093)
**O'HAGAN MEYER LLC**
140 Kendrick Street,
Building C West, 2nd Floor
Needham, MA 02494
Tel: (617) 843-6800
jyoung@ohaganmeyer.com

Colby J. Jackson (MA BBO # 696825)
**KRAKOW, SOURIS & LANDRY, LLC**
90 Canal Street, 4th Floor
Boston, MA 02114
(617) 723-8440
cjackson@krakowsouris.com

*Counsel for Defendant*

21

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on June 25, 2026, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will provide copies to all counsel of record.

<u>/s/ James W. Davidson</u>
James W. Davidson (admitted *pro hac vice*)
**O'HAGAN MEYER LLC**
One East Wacker Drive, Suite 3400
Chicago, Illinois 60601
312.422.6100 - T
312.422.6110 – F
jdavidson@ohaganmeyer.com

22