UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ERCOLE BUZZANGA, KEITH ARNOT, MICHAEL BRINDAMOUR on behalf of his minor child E.B., and NEIL E GILLIS, *individually and on behalf of all others similarly situated*, | * | |
| Plaintiffs, | * | Civil Action No. 1:26-cv-10137-IT |
| v. | * | |
| NORTH ATLANTIC STATES CARPENTERS BENEFIT FUND, d/b/a NASCBF, | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

November 20, 2026

TALWANI, D.J.

Pending before the court is Defendant North Atlantic States Carpenters Benefit Fund's (the "Fund" or "Defendant") Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint ("Motion to Dismiss") [Doc. No. 38]. Defendant seeks dismissal of Plaintiffs' Consolidated Class Action Complaint ("Complaint") [Doc. No. 24] under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, or alternatively, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. See Mem. Supp. Def.'s Mot. to Dismiss [Doc. No. 39]. Plaintiffs have opposed. Mem. Opp'n Def.'s Mot. to Dismiss [Doc. No. 42].

For the following reasons, the Fund's Motion to Dismiss [Doc. No. 38] is GRANTED pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing.

## I. Background

### A. *Overview*

In this putative class action, Keith Arnot, Michael Brindamour on behalf of his minor child E.B., Ercole Buzzanga, and Neil E. Gillis ("Plaintiffs"), individually and on behalf of all others similarly situated, including "current or former employees, customers, participants, and/or beneficiaries of the fund," Compl. ¶¶ 17–20, 26 [Doc. No 24], allege the following facts, which the court assumes true for the purpose of deciding this motion:

Defendant is a large multi-employer, ERISA-regulated benefit fund that provides "comprehensive retirement, health and welfare, and other benefits to active and retired participants and their families of the United Brotherhood of Carpenters" across New England and New York State. Id. ¶¶ 4, 25. As a provider of retirement, health, and welfare benefits, the Fund stores several forms of private information belonging to its employees and consumers. Id. ¶¶ 5, 28.

Plaintiffs Arnot, Brindamour on behalf of his minor daughter, and Buzzanga receive benefits from Defendant and provided Defendant with their private information as a mandatory condition of receiving such benefits. Id. ¶¶ 77–78, 92–93, 107–108. Plaintiff Gillis is a retired union carpenter and former plan participant who provided his private information to Defendant as a past condition of receiving benefits. Id. ¶¶ 123–124. Plaintiffs are citizens of Massachusetts, Rhode Island, and Florida. Id. ¶¶ 17–20.

Plaintiffs contend that they "regularly take[] steps to safeguard [their] Private Information[,] . . . [are] very careful about sharing [their] sensitive Private Information[,] . . . ha[ve] never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source[,] . . . store[] any documents containing [their] Private Information

in a safe and secure location or destroy[] the documents[,] . . . [and] diligently choose[] unique usernames and passwords for their various online accounts, changing and refreshing them as needed to ensure [their] information is as protected as it can be." Id. ¶¶ 80, 95, 110, 126.

B. *The Data Disclosure*

On or about August 18, 2025, the Fund observed suspicious activity in the network of its Hamden, Connecticut office. Compl. Ex. A [Doc. No. 24-1] ("Breach Notices"). After investigating the incident, the Fund determined that an unauthorized actor had accessed and acquired certain participants' personal information through the Fund's systems on August 18, 2025. Id. The private information exposed in the data breach includes names, dates of birth, Social Security numbers, financial account or payment card information with access code, login credentials, tax information, military identification numbers, medical treatment, history, or diagnosis information, health insurance information, biometric information, driver's license or state issued identification numbers, passport numbers, and/or license plate numbers. Compl. ¶¶ 7, 32 [Doc. No. 24] (citing Notice of Data Event, N. Atl. States Carpenters Benefit Funds, https://www.carpentersfund.org/wp-content/uploads/25.10.10-NASCBF-website-notice_FINAL.pdf) (last accessed Nov. 19, 2026). In February 2026, the Fund sent direct written notices to all individuals impacted by the data breach notifying them of the "data event," the steps the Fund was taking to investigate and respond to the breach, and suggested steps for impacted individuals to take themselves. Breach Notices [Doc. No. 24-1]; Compl. ¶ 33. The notices stated that "no funds were taken, and participants' benefits and account balances with the [Fund] are fully intact." Breach Notices [Doc. No. 24-1].

C. *Plaintiffs' Alleged Injuries*

Plaintiffs allege a range of injuries due to the breach. As an initial matter, Plaintiffs allege that "Defendant's delayed disclosure has caused Plaintiff[s] harm by depriving [them] of the earliest opportunity to guard [themselves] from the harms the Data Breach has caused and the delay has contributed to [their] stress, anxiety, and concern about the Data Breach." Compl. ¶¶ 82, 97, 112, 128 [Doc No. 24].

Each Plaintiff alleges that "[o]n information and belief, [their] Private Information has already been published—or will be published imminently—by cybercriminals on the Dark Web as a result of the Data Breach." Id. ¶¶ 81, 96, 111, 127. Based on this allegation, Plaintiffs claim "actual injury from the exposure of [their] Private Information—which violates [their] rights to privacy" and "actual injury in the form of damages to and diminution in the value of [their] Private Information." Id. ¶¶ 83–84, 98–99, 114–115, 129–130.

All Plaintiffs further allege that they have suffered the injury of lost time because they "ha[ve] and will continue to spend considerable time and effort monitoring [their] accounts to protect [them]self from identity theft," time which they contend they otherwise "would have spent on other activities, including but not limited to work and/or recreation." Id. ¶¶ 85, 100, 116, 131.

Plaintiffs allege that they have suffered emotional distress as a result of the breach in the form of "increased anxiety, stress, fear, and frustration" caused by "fears for [their] personal financial security and uncertainty over what Private Information was exposed and what criminals will do next." Id. ¶¶ 86, 101, 117, 132.

As to actual misuse of the data, Plaintiffs allege that they "ha[ve] suffered from a surge in unwanted and invasive spam and phishing calls, text messages, and emails[.]" Id. ¶¶ 87, 102, 118, 133.

Finally, Plaintiffs allege that these injuries and the inherent harm of the breach itself have resulted in future damages in the form of the "cost of credit monitoring and identify theft monitoring . . . to protect Class Members from the risk of identity theft that arose from Defendant's Data Breach" and the "lost benefit of the bargain" by not receiving the data security they expected to receive under the contracts entered into with Defendant. Id. ¶¶ 171–183.

D. *Plaintiffs' Claims*

Plaintiffs assert four causes of action, on behalf of themselves and the putative Class, stemming from the data disclosure: negligence and negligence *per se*, id. ¶¶ 213–255; unjust enrichment, id. ¶¶ 256–265; breach of implied contract, id. ¶¶ 266–280; and a claim for a declaratory judgment, id. ¶¶ 281–292. Plaintiffs, individually and on behalf of the putative Class, seek damages, declaratory, and injunctive relief. Id. at 61–65 (Prayer for Relief).

## II. Standard of Review

A motion to dismiss for lack of constitutional standing is properly brought as a challenge to the court's subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). See Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). Federal courts are courts of limited jurisdiction, so federal jurisdiction is never presumed. Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251

(1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

The doctrine of standing is rooted in Article III of the Constitution, which confines federal courts to the adjudication of actual "cases" and "controversies." See U.S. Const. art. III, § 2, cl. 1; Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992). Standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016), as revised (May 24, 2016) (quoting Lujan, 504 U.S. at 560–61). "The standing inquiry is claim-specific: a plaintiff must have standing to bring each and every claim that she asserts." Katz, 672 F.3d at 71 (citing Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006)).

To establish the first element of standing, an injury in fact, a plaintiff must demonstrate "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal quotations omitted). Though "[t]he most obvious are traditional tangible harms, such as physical harms and monetary harms[,] . . . [v]arious intangible harms can also be concrete[,]" including "reputational harms, disclosure of private information, and intrusion upon seclusion." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021).

Once a plaintiff has established an injury in fact, they must adequately allege traceability—i.e., that "the asserted injury is causally connected to the challenged conduct." Pagán, 448 F.3d at 27; see Santos-Pagán v. Bayamon Med. Ctr., 178 F.4th 66, 71–73 (1st Cir. 2026).

## III. Discussion

A. *The Legal Framework for Data Breach Cases in the First Circuit*

In the data breach context, the First Circuit has held that an injury in fact can be established either through "actual misuse" of personal information or "[a] material risk of future harm . . . when 'the risk of harm is sufficiently imminent and substantial.'" Webb v. Injured Workers Pharm., LLC, 72 F.4th 365, 373, 375 (1st Cir. 2023) (quoting TransUnion, 594 U.S. at 435).

Webb involved allegations of "a data breach [in which] . . . [h]ackers infiltrated . . . [a home-delivery pharmacy service's] patient records systems, gain[ed] access to the [personally identifiable information ("PII")] of over 75,000 . . . patients, and stole PII including patient names and Social Security numbers." Id. at 370. Further, one of two named plaintiffs alleged that "the data breach resulted in the misuse of [her] PII by an unauthorized third party (or third parties) to file a fraudulent tax return." Id. at 373. For this plaintiff, the court found standing was clearly established. Id. ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury.") (quoting Attias v. CareFirst, Inc., 865 F.3d 620, 627 (D.C. Cir. 2017)).

Webb recognized that the First Circuit found no such injury in an earlier data breach case, Katz, explaining that "'[c]ritically, the complaint [in Katz did] not contain an allegation that [plaintiff's] nonpublic personal information ha[d] actually been accessed by any unauthorized user' — let alone subsequently misused[.]" Id. (quoting Katz, 672 F.3d at 79); see also id. at 80 (distinguishing Katz from cases "in which confidential data actually has been accessed through a security breach and persons involved in that breach have acted on the ill-gotten information.") (citation modified).

B. *Actual Misuse Based on Unwanted Communications*

Plaintiffs allege that, as a result of the data breach, they experienced actual misuse of their data in the form of "a surge in unwanted and invasive spam and phishing calls, text messages, and emails[.]" Compl. ¶¶ 87, 102, 118, 133 [Doc. No. 24].

1. Injury in Fact

Although explicit fraud or identity theft is not a requirement of actual misuse, courts in this circuit have looked for such allegations as an indicator. See, e.g., Webb, 72 F.4th at 373 (fraudulent tax return); Morton v. DTiQ Techs. Inc., No. 25-cv-12271-ADB, 2026 WL 2824270, at *3 (D. Mass. Sept. 21, 2026) (fraudulent loan applications); In re MAPFRE Data Disclosure Litig., No. 23-cv-12059-IT, 2025 WL 975669, at *6 (D. Mass. Mar. 31, 2025) (fraudulent claim for unemployment benefits); Scifo v. Alvaria, Inc., No. 23-cv-10999-ADB, 2024 WL 4252694, at *3 (D. Mass. Sept. 20, 2024) (unauthorized debit card charge). Even absent fraud or identity theft, courts have found that unwanted spam emails, calls, or text messages alone can also constitute a concrete injury. See In re Sensata Techs. Data Breach Litig., No. 25-cv-11726-JEK, 2026 WL 2935319, at *5 (D. Mass. Sep. 30, 2026) ("[T]he use of Private Information to conduct scamming and phishing outreach also constitutes the concrete harm of actual misuse . . . such unwanted communications satisfy the injury-in-fact requirement for Article III standing.") (internal quotation omitted). The holding in In re Sensata was informed by other circuits' interpretation of the Telephone Consumer Protection Act, under which unwanted phone calls and text messages have been found to constitute a concrete injury because they are among the privacy intrusions that give rise to liability for the common law tort of "intrusion upon seclusion." See id. (internal quotations omitted) (citing Drazen v. Pinto, 74 F.4th 1336, 1344–45 (11th Cir. 2023); accord Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462 (7th Cir. 2020); Van

Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1043 (9th Cir. 2017)). Following the analyses in these cases, the court finds that Plaintiffs have sufficiently alleged an injury in fact based on the unwarranted intrusions.

2. Traceability

Although Plaintiffs allege actual misuse through unwanted spam communications, they fail to adequately demonstrate that these "calls, text messages, and emails[,]" or the "surge" of such communications, are traceable to the data breach. See Compl. ¶¶ 87, 102, 113, 118, 133 [Doc. No. 24]. To demonstrate traceability, Plaintiffs must "plausibly allege a connection between the data breach and the [actual misuse]." Webb, 72 F.4th at 373. Although traceability does not require "a tort-like showing of proximate causation[,]" it does require "'a causal connection between the injury and the conduct complained of.'" Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 90 (1st Cir. 2025) (quoting Lujan, 504 U.S. at 560). In Webb, the First Circuit found that such a connection was plausibly alleged because the plaintiff claimed that (1) her private information was breached; (2) she was otherwise "very careful" about sharing and storing such private information; (3) her private information was used to file a fraudulent tax return; and (4) there was "an obvious temporal connection between the [actual misuse] and the timing of the data breach." 72 F.4th at 374. "The obvious inference," the First Circuit found, "is that the criminal or criminals who filed the false tax return obtained [plaintiff's] PII from the . . . data breach, not from some other source." Id.

Applying the same framework, the First Circuit in Santos-Pagán found that a plaintiff failed to allege traceability in a data breach case where the complaint did not plausibly allege a temporal connection between the breach and the harm, and, of particular relevance here, "[did] not allege whether the information the fraudster would have needed to [cause the harm] is even

the kind of information that . . . was exposed in the data breach." 178 F.4th at 73. There, the plaintiff alleged that the data breach caused her to "suffer financial fraud" through the creation of a fraudulent cellphone account, which resulted in her spending time and money mitigating the resulting damage to her credit score. Id. at 71. The First Circuit found that this "conclusory allegation" was insufficient to overcome the fact that the complaint failed to "indicate what type of PII or [protected health information] is used to open a cellphone account and whether that PII was in [the defendant's] files at the time of the breach." Id. at 72–73 (emphasis in original).

When analyzing traceability as to spam communications, courts have heavily weighed whether the complaint alleged that the type of information stolen is the type of data misused for spam communications. See In re Sensata, 2026 WL 2935319, at *6 (finding no traceability where "the plaintiffs here, unlike those in Webb, do not allege that the [misused] data . . . —their email addresses and phone numbers—were among the types of information compromised in the Data Breach"); Priddy v. ZOLL Med. Corp., No. 23-cv-10575-IT, 2025 WL 975234, at *7 (D. Mass. Mar. 31, 2025) (finding "allegations of increased spam insufficient as injuries for purposes of standing" where plaintiffs "do not allege that their phone numbers or email addresses were exposed in the Data Breach"); Scifo, 2024 WL 4252694, at *4 ("Plaintiffs provide no explanation for how the disclosed information could have facilitated . . . an increase in spam emails, particularly when email addresses, passwords, and social media handles were not part of the Data Breach."); Burger v. Healthcare Mgmt. Sols., LLC, No. CV RDB-23-1215, 2024 WL 473735, at *6 (D. Md. Feb. 7, 2024) ("[T]he generic allegation of increased spam calls and emails, if an injury at all, fails to plausibly show that [the] alleged injuries were the result of Defendant's conduct . . . especially . . . given that [plaintiff] has not alleged that her email address was compromised as part of the Data Breach.") (internal quotation omitted).

Plaintiffs' claims here meet the same fate. Plaintiffs allege that the personal information exposed in the data breach included "name, date of birth, Social Security number, financial account or payment card information with access code, login credentials, tax information, military identification number, medical treatment, history, or diagnosis information, health insurance information, biometric information, driver's license or state issued identification number, passport number, and/or license plate number." Compl. ¶¶ 7, 32 [Doc. No. 24] (citing Notice of Data Event, N. Atl. States Carpenters Benefit Funds, https://www.carpentersfund.org/wp-content/uploads/25.10.10-NASCBF-website-notice_FINAL.pdf) (last accessed Nov. 19, 2026). Nowhere in that list of personal information are phone numbers or emails, that is, the data necessarily involved in spam emails and calls.

Citing Webb, Plaintiffs contend that their injuries are nevertheless traceable to Defendant's conduct because they "are very careful in protecting their Private Information" and the "obvious temporal connection between the fraud and the breach" supports "the inference that the criminals obtained the plaintiff's PII in the breach, not from some other source." Mem. Opp'n Def.'s Mot. to Dismiss 10 [Doc. No. 42]. The court disagrees. As a threshold matter, Plaintiffs' allegation that they "ha[ve] never knowingly transmitted [phone numbers and email addresses] . . . over the internet or any other unsecured source," Compl. ¶¶ 80, 95, 110, 126 [Doc. No. 24], does not mean that such data is accessible only through the breach. See In re Sensata, 2026 WL 2935319, at *6 ("plaintiffs acknowledge that cellphone numbers and email addresses are unregulated data that can be found elsewhere on the internet.") (internal quotations omitted). Conversely, the fact that Plaintiffs received spam calls, emails, and text messages following a data breach that did not include phone numbers or email addresses weighs *against*

the inference that the misused data was obtained in the breach, regardless of how careful they are in protecting their private information.

While a temporal connection can be evidence of traceability, alone it does not create a plausible inference that Plaintiffs' stolen personal information was used to send them unwanted spam. Without more, Plaintiffs' actual misuse theory of harm fails to "clear standing's traceability hurdle[.]" Santos-Pagán, 178 F.4th at 73 n.7; In re Sensata, 2026 WL 2935319, at *6 (finding no traceability where "[a]ll that remains, then, is the temporal proximity between the Data Breach and the alleged increase in spam communications that each plaintiff has experienced").

C. *Risk of Future Harm Based on Account Monitoring*

Alternatively, Plaintiffs allege that they face a material risk of future harm because "they will have to spend time monitoring their accounts to mitigate the risk of fraud." Mem. Opp'n Def.'s Mot. to Dismiss 7 [Doc. No. 42]. In Webb, the First Circuit established that "'a material risk of future harm can satisfy the concrete-harm requirement,' at least as to injunctive relief, when 'the risk of harm is sufficiently imminent and substantial.'" 72 F.4th at 375 (quoting TransUnion, 594 U.S. at 435). Further, "[t]o establish standing to pursue damages [based on a future risk], the complaint must also plausibly allege a separate concrete, present harm caused 'by [the plaintiffs'] exposure to [this] risk [of future harm].'" Id. at 376 (quoting TransUnion, 594 U.S. at 437). In determining whether the risk of future misuse of personal information exposed in a data breach is imminent and substantial, the First Circuit has endorsed the following factors:

> (1) whether the plaintiffs' data has been exposed as the result of a targeted attempt to obtain that data; (2) whether any portion of the dataset has already been misused, even if the plaintiffs themselves have not yet experienced identity theft or fraud;

> and (3) whether the type of data that has been exposed is sensitive such that there is a high risk of identity theft or fraud.

Id. at 375 (quoting McMorris v. Carlos Lopez & Assocs., LLC, 995 F.3d 295, 303 (2d Cir. 2021)).

Plaintiffs plainly satisfy factors (1) and (3). Plaintiffs allege that their private information was stolen when "an unauthorized actor accessed and stole files containing Private Information from Defendant's network." Compl. ¶ 31 [Doc. No. 24]. The private information stolen included high-risk information such as Social Security numbers, dates of birth, and names, id. ¶ 32, the combination of which "makes it more likely that those victims will be subject to future identity theft or fraud[,]" Webb, 72 F.4th at 376 (internal quotation omitted).

As to the second factor, Plaintiffs contend that "actual and attempted misuse of the [] compromised data[,]" including "increased phishing attempts and spam messages[,]" is sufficient. Mem. Opp'n Def.'s Mot. to Dismiss 8–9 [Doc. No. 42] (citing In re LastPass Data Sec. Incident Litig., 742 F. Supp. 3d 109, 121 (D. Mass. 2024)). But the actual and attempted misuse constituting "a real and imminent threat of misuse of their data" in In re LastPass Data Security Incident Litigation included not just spam but also "theft from online wallets, fraudulent credit card charges, [and] unauthorized applications for loans and credit cards." 742 F. Supp. 3d at 121.

As discussed supra Sec. III.B, Plaintiffs' allegations of increased spam communications do not demonstrate actual misuse of their information where it is not fairly traceable to Defendant's conduct here. Although the First Circuit stressed that the three Webb factors "are neither exclusive nor necessarily determinative," 72 F.4th at 375, numerous district court cases in this circuit have pointed to the need for allegations of actual misuse to support standing. See Taylor v. UKG, Inc., 693 F. Supp. 3d 87, 99 (D. Mass. 2023) ("Plaintiffs have not identified any

First Circuit caselaw in which a court has found plaintiffs had established standing in a similar context, without allegations of actual misuse."); Rivera-Marrero v. Banco Popular de P. R., No. CV 22-1217 (ADC), 2023 WL 2744683, at *12 (D.P.R. Mar. 31, 2023) ("The Court is reluctant to find standing in a data breach case where actual misuse of PII is not alleged. If the Court must draw a line, it will do so here: mere allegations that PII was accessed and exfiltrated in a data breach, without more, are insufficient to constitute a concrete or imminent injury for standing purposes."); Hartigan v. Macy's, Inc., 501 F. Supp. 3d 1, 5 (D. Mass. 2020) (denying standing where "there are no allegations of any fraudulent use or even attempted use of the personal information to commit identify theft with respect to any [individual] whose credit information was stolen").

After the parties' briefing here, the In re Sensata court did find standing based on a material risk of future harm without actual misuse. See 2026 WL 2935319, at *7. The court noted that "although the First Circuit has not addressed whether a plaintiff has standing to seek relief from a data breach where no plaintiff has adequately alleged actual misuse, other Courts of Appeals have concluded that no actual misuse is necessary where the plaintiffs have otherwise alleged exposure to a substantial risk of identity theft or fraud." Id. (citing Clemens v. ExecuPharm Inc., 48 F.4th 146, 156–59 (3d Cir. 2022); Pisciotta v. Old Nat. Bancorp, 499 F.3d 629, 634 (7th Cir. 2007)).

In finding that the complaint in that case "taken as a whole, adequately alleges a material risk of future misuse[,]" the court pointed not only to the allegation that the stolen data included high-risk information such as social security numbers and dates of birth that is present here, but also to plaintiffs' allegations that their private information was stolen "when attackers maliciously encrypted [defendant's] servers with ransomware." Id. The In re Sensata court noted

that "[i]n such a 'targeted attack,' it 'stands to reason that [the compromised data] . . . is more likely to be misused,'" and concluded that the allegations "collectively" gave rise to the reasonable inference that plaintiffs face a material risk of future misuse of their Private Information. Id. (quoting Webb, 72 F.4th at 375). Similarly, in Clemens, the Third Circuit found that the risk of future identity theft or fraud was substantial and imminent even without actual misuse because a "known" and "sophisticated ransomware group" with "notorious" ransomware methods, for which there are "no known decryption tools" available, "launched its signature attack . . . and held [plaintiff's data] for ransom." 48 F.4th at 156–57. The Third Circuit distinguished those facts from an earlier circuit precedent, Reilly, where the court found "only a hypothetical injury" where "an unknown hacker . . . potentially gained access to sensitive information[.]" Id. (citing Reilly v. Ceridian Corp., 664 F.3d 38, 42–43 (3rd Cir. 2011)) (emphasis in original).[1]

Here, the facts fall between those in Clemens and In re Sensata on the one hand, and Reilly and Katz on the other hand. Unlike Reilly and Katz, an actor here allegedly had gained access to Plaintiffs' data, but unlike Clemens and In re Sensata, there are no allegations of the actor's recognized reputation of specific misconduct, "no evidence of any actual or attempted

---

[1] Pisciotta found as to subject matter jurisdiction that "the injury-in-fact requirement can be satisfied by a threat of future harm or by an act which harms the plaintiff only by increasing the risk of future harm that the plaintiff would have otherwise faced, absent the defendant's actions." 499 F.3d at 634 (footnote omitted). The Pisciotta court nonetheless does not support Plaintiffs' position here where that court affirmed the district court's dismissal of the data breach lawsuit on the merits under Indiana law. Id. at 630–40 (noting that all of the cases which plaintiffs cited "rely on the same basic premise: Without more than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm that the law is prepared to remedy.") As the First Circuit has explained, the Pisciotta court "reasoned that in the absence of unauthorized charges as to the plaintiffs or those similarly situated, the plaintiffs there lacked a reasonable basis for fearing there would be unauthorized charges to their accounts as a result of the theft." Anderson v. Hannaford Bros. Co., 659 F.3d 151, 166 (1st Cir. 2011).

identity theft or fraud," Breach Notices [Doc. No. 24-1], and there are no allegations that it was held for ransom.[2]

As the In re Sensata court emphasized, "[t]he analysis is a functional one focused on the particular facts alleged in the complaint." In re Sensata, 2026 WL 2935319, at *7. This court is persuaded by the weight of authority in the First Circuit finding that allegations of actual misuse while not dispositive, are critical to establishing standing.

Without establishing that any data was actually misused as a result of the data breach, when combined with the absence of allegations that their information has been held for ransom, or stolen by a known group with a reputation for engaging in such behavior, or (other than on information and belief) posted on the Dark Web, Plaintiffs cannot establish that the risk of future harm is sufficiently substantial or imminent to confer standing.

D. *Other Potential Injuries*

Plaintiffs additionally argue that they have adequately alleged damages based on the time and effort they've already taken to monitor their accounts and protect themselves from identity theft, emotional distress over the possibility of future identity theft, and the diminished value of their personal information. Mem. Opp'n Def.'s Mot. to Dismiss 6–7 [Doc. No. 42].

---

[2] Plaintiffs allege that "[u]pon information and belief, the Private Information of tens of thousands of people has already been or will soon be posted on the Dark Web as a result of the Data Breach." Compl. ¶ 37 [Doc. No. 24]. Allegations based upon information and belief can survive a motion to dismiss when "the facts are only within the control and possession of the defendant." Browder v. Ojikutu, No. 24-CV-11588-AK, 2025 WL 2379682, at *7 (D. Mass. Aug. 15, 2025) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) ("The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, . . . or where the belief is based on factual information that makes the inference of culpability plausible." (internal quotations omitted))). The facts here as to whether Plaintiffs' information has been posted on the Dark Web are not in the possession or control of the Defendant any more than they are in the possession or control of the Plaintiffs.

1. Lost Time

Plaintiffs allege that as a result of the data breach they have spent "considerable time and effort" responding to the data breach by "monitoring accounts . . . reviewing [] account statements, researching the breach, [and] monitoring [their] credit." Compl. ¶¶ 85, 100, 116, 131 [Doc. No. 24]. They allege that this constitutes a cognizable injury because it represents "valuable time that Plaintiff[s] would have spent on other activities, including but not limited to work and/or recreation." Id.

Time spent responding to a data breach or mitigating the risk of future harm created by a breach can constitute "a separate concrete, present harm" that gives a plaintiff standing to pursue damages when that time would have otherwise been put to productive use. Webb, 372 F.4th at 376. However, plaintiffs "cannot manufacture standing by incurring costs in anticipation of non-imminent harm." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 422 (2013). Therefore, to constitute an injury in fact for purposes of standing, mitigation efforts must occur in response to "a substantial and imminent risk of harm." Webb, 372 F.4th at 377. Here, Plaintiffs have not shown they face a substantial and imminent risk of harm. See supra Sec. III.C. Without that risk, their mitigation efforts cannot constitute a cognizable harm. See Clapper, 568 U.S. at 422.

2. Emotional Distress

Plaintiffs next contend that "[b]ecause of the Data Breach, [they] have suffered increased anxiety, stress, fear, and frustration[,]" which they argue "are also sufficient to plausibly allege an injury in fact." Compl. ¶¶ 86, 101, 117, 132 [Doc. No. 24]; Mem. Opp'n Def.'s Mot. to Dismiss 6 [Doc. No. 42]. Plaintiffs argue that emotional distress can constitute an independent

injury sufficient for standing in certain circumstances. See Mem. Opp'n Def.'s Mot. to Dismiss 6–7 [Doc. No. 42] (citing TransUnion, 594 U.S. at 436 n.7).[3]

Plaintiffs cite several instances where courts in this district have pointed to emotional distress as an injury for standing purposes. Mem. Opp'n Def.'s Mot. to Dismiss 6–7 [Doc. No. 42]. In each case, though, the district courts specifically tethered the finding of standing to the existence of a separate cognizable injury. See Priddy, 2025 WL 975234, at *7 ("Because Plaintiffs have alleged a substantial risk of future misuse of their Private Information, the court finds that their allegations of emotional distress—coupled with that risk—are sufficiently concrete injuries for standing purposes.") (emphasis added); In re MOVEit Customer Data Sec. Breach Litig., No. 23-MD-3083-ADB-PGL, 2025 WL 2179475, at *10 (D. Mass. July 31, 2025) (recognizing emotional distress injury where "several Plaintiffs allege that they have already experienced identity theft or other forms of misuse . . . all Plaintiffs allege an increased risk of future misuse, which, in light of the allegations of actual misuse, are not unduly speculative.").[4]

Here, Plaintiffs have not shown an actual injury traceable to Defendant's conduct nor established an imminent and substantial risk of future harm. See supra Secs. III.A–B. Therefore, their alleged injury of emotional distress cannot alone constitute a cognizable injury supporting their claim for damages. See Webb, 72 F.4th at 377.

---

[3] The cited footnote notes only that "a plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm[,]" but the Court "take[s] no position on whether or how such an emotional or psychological harm could suffice for Article III purposes[.]" TransUnion, 594 U.S. at 436 n.7.

[4] Plaintiffs also cite Maio v. TD Bank, N.A., No. 22-CV-10578-AK, 2023 WL 2465799, at *4 (D. Mass. Mar. 10, 2023). See Mem. Opp'n Def.'s Mot. to Dismiss 6 [Doc. No. 42]. Maio does not address issues of standing but rather analyzes the economic loss doctrine for a negligence claim and is therefore irrelevant to the court's analysis here.

3. Diminished Value

Plaintiffs finally allege that they have suffered an economic injury from the diminished value of their private information. Mem. Opp'n Def.'s Mot. to Dismiss 7 [Doc. No. 42]; Compl. ¶¶ 84, 99, 115, 130 [Doc. No. 24]. Plaintiffs contend that because this represents an "economic injury" it therefore "establishes standing." Mem. Opp'n Def.'s Mot. to Dismiss 7 [Doc. No. 42].

The analysis, however, is not so simple. Although the First Circuit in Webb did not address this specific issue, see 72 F.4th at 374 n.5 (declining to address diminution in value argument because it was waived), "[c]ourts have consistently rejected allegations that the diminution in value of personal information can support standing, particularly where . . . the plaintiffs have not alleged that they attempted to sell their personal information[.]" Taylor, 693 F. Supp. 3d at 101 (internal quotations omitted) (collecting cases); see also In re Sensata, 2026 WL 2935319, at *8 (declining to allow standing under a diminution in value theory where the complaint "does not allege that the plaintiffs tried to sell their data or that they did so but were forced to accept a lower price due to the Data Breach.").

Without any evidence that Plaintiffs tried to sell their data at all, not to mention were forced to accept a lower price due to the data breach, Plaintiffs' conclusory claim that they "suffered actual injury in the form of damages to and diminution in the value of [their] Private Information" is insufficient to confer standing. See Compl. ¶¶ 84, 99, 115, 130 [Doc. No. 24].[5]

## IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Doc. No. 38] is GRANTED, and Plaintiffs' Complaint [Doc. No. 24] is dismissed.

---

[5] The court does not reach Defendant's further arguments that Plaintiffs' claims are pre-empted by ERISA or should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

IT IS SO ORDERED.

November 20, 2026

/s/ *Indira Talwani*
United States District Judge